# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| THERESA THOMAS-EDWARDS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-176-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Theresa Thomas-Edwards on May 24, 2013, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], filed on November 6, 2013. Plaintiff requests that the February 8, 2012 decision of the Administrative Law Judge denying her claims for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On February 12, 2014, the Commissioner filed a response, and Plaintiff filed a reply on February 26, 2014. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff suffers from hypertension, congestive heart failure, asthma, shortness of breath, chest pains, fatigue, obesity, left eye blindness and reduced vision in the right eye, and depression. On March 18, 2009, Plaintiff filed applications for disability insurance benefits and supplemental security income based on cardiac failure, alleging an onset date of July 28, 2008. The applications were denied initially on September 8, 2009, and upon reconsideration on March 23, 2010. Plaintiff timely requested a hearing, which was held on December 8, 2011, before Administrative Law Judge ("ALJ") Patricia Witkowski Supergan. In appearance were Plaintiff, her attorney, and a vocational

expert. On Feburary 8, 2012, the ALJ issued a written decision denying benefits based on these findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since July 28, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: congestive heart failure, hypertension, asthma, obesity and status post myocardial infarction (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can frequently lift or carry 10 pounds; occasionally lift or carry 20 pounds; sit for 2 hours at a time without interruption; stand for 15 minutes at a time without interruption; walk for 15 minutes at a time without interruption; sit for 6 hours in an 8 hour workday; stand/walk in combination for 2 hours total in an 8 hour workday; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; never be exposed to unprotected heights; occasionally be exposed to moving mechanical parts and frequently be exposed to operating a motor vehicle, humidity and wetness, dusts, odors, fumes, pulmonary irritants, extreme cold, extreme heat and vibrations.

6. The claimant is capable of performing past relevant work as a phone operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2008, through the date of this decision (20 CFR § 404.1520(f) and 416.920(f)).

(AR 19-27).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On May 24, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

4

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff asks the Court to reverse and remand for further proceedings, arguing that the ALJ (1) erred in formulating the RFC by not properly assessing Plaintiff's mental limitations, vision problems, and symptoms of fatigue and need to rest, shortness of breath, and absences; (2) failed to compare the demands of Plaintiff's past work to her abilities; (3) erred in finding that Plaintiff could perform a significant number of other jobs; (4) did not properly consider whether Plaintiff was presumptively disabled under the Listings; and (5) did not set forth a supported credibility assessment.

### A. RFC

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* In addition, she "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." *Id.*

1. *Mental Limitations*

At step two, the ALJ found that Plaintiff suffers from mild limitations in the three functional areas of activities of daily living, of social functioning, and of concentration, persistence, or pace. (AR 20-21). The Commissioner is correct that Plaintiff told her treating psychiatrist, Marcus Wigutow, M.D., that she did not feel that depression prevents her from working, which the ALJ noted in her step two decision. Nevertheless, although the ALJ found that Plaintiff's depression was not severe at step two, the ALJ was required to consider the mild limitations in the three functional areas when crafting Plaintiff's RFC. The ALJ erred by not doing so, and remand is required. *See Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see also Winfield v. Astrue*, No. 2:11-cv-432, 2013 WL 692408, at *4 (N.D. Ind. Feb. 25, 2013). Although the ALJ stated that he considered the combined effect of all of Plaintiff's severe

and non-severe impairments, the ALJ considered only the combination of Plaintiff's physical impairments.

The Commissioner attempts to rehabilitate the ALJ's analysis by arguing that F. Kladder, Ph.D., the state agency reviewing psychologist "did not cause any limitations to be reflected in an RFC finding." (Def. Br. 4). But, Dr. Kladder did not complete a Mental Functional Residual Capacity ("MRFC") form. Because Dr. Kladder found no functional limitations, it is logical that he did not complete an MRFC form. The ALJ specifically rejected Dr. Kladder's findings that Plaintiff did not suffer *any* limitations in the three functional categories, finding instead that Plaintiff suffered *mild* limitations in each category. The ALJ was required to discuss whether any functional limitations should have been incorporated in the RFC as a result of these mild limitations.

The error is not harmless because the ALJ found at step four that Plaintiff could perform her past work as a chief phone operator, which is a skilled position. (AR 49). The position requires supervision of other employees, scheduling and assigning, training, and maintaining and keeping records. *See* DICOT 235.137-010, Dep't of Labor, Dictionary of Occupational Titles, 1991 WL 672166. Similarly, at step five, the alternate jobs of dispatcher, receptionist, and scheduler are skilled jobs and require contact with other employees and/or the public as well as organization and scheduling. DICOT 913.367-010, 1991 WL 687822 (dispatcher); DICOT 237.367-038, 1991 WL 672192 (receptionist); DICOT 215.367-014, 1991 WL 671906 (scheduler). Perhaps the ALJ will find, based on Plaintiff's statement to Dr. Wigutow and other evidence of record, that no mental limitations from her depression should be incorporated in the RFC. But, because the ALJ did not conduct this analysis, the Court cannot say how the ALJ would have weighed the evidence and, thus, the ALJ has not created a logical bridge from the evidence to the RFC determination. *See Getch v.*

8

*Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). On remand, the ALJ shall discuss whether any limitations from Plaintiff's mental impairments should be included in the RFC.

Regarding her mental impairments, Plaintiff also argues that, at step two, the ALJ erred by finding that she suffered only from mild impairments in the three functional categories without relying on any expert medical opinion. As previously discussed, state agency reviewing physician F. Kladder, Ph.D. opined that Plaintiff had *no* limitations in the three functional areas. Finding that this opinion was not supported by the record, the ALJ found instead that Plaintiff suffered from mild limitations because she was diagnosed with depression. Plaintiff contends that the ALJ should have procured an expert opinion to determine whether she in fact suffered greater than mild limitations. However, the ALJ supported her finding of mild limitations in each of the functional areas through a discussion of the evidence of record. Plaintiff does not acknowledge this evidence, nor does Plaintiff argue how the evidence of record might support greater than mild limitations. The ALJ did not err at step two in finding that Plaintiff suffered from mild limitations in activities of daily living, in social functioning, and in concentration, persistence, or pace.

2.  *Visual Acuity*

Plaintiff is blind in her left eye and has right eye vision reduced to 20/50. In her adult function report, Plaintiff wrote that she could no longer read or drive because of her vision problems, that she had trouble reading small words like those on the adult function report form, and that she got a headache if she tried to read. (AR 304-05, 309). At step two, the ALJ deemed Plaintiff's vision to be a non-severe impairment. (AR 20). Again, as with the mental limitations, the ALJ did not discuss any limitations from Plaintiff's non-severe vision impairment in the context of formulating the RFC. In the response brief, the Commissioner offers an analysis of the evidence of record to

9

argue that no limitations based on Plaintiff's vision impairment should be included in the RFC. But because the ALJ did not conduct this analysis, it is not before the Court for review. *See Moon v. Colvin*, No. 13-3636, 2014 WL 3956762, at *4, — F.3d —, — (7th Cir. Aug. 14, 2014) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012); *Parker*, 597 F.3d at 924 ("But in so doing she violated the *Chenery* doctrine, which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.") (citation omitted). Although the harmless error doctrine is an exception to the *Chenery* doctrine, the Seventh Court of Appeals has warned that "courts must take care that the exception does not swallow the rule." *Parker*, 597 F.3d at 924. The omission of any discussion of Plaintiff's visual limitations in formulating the RFC requires remand so that the Court can trace the path of the ALJ's reasoning from the evidence to the RFC determination. *See Getch*, 539 F.3d at 480.

3.     *Fatigue and Need to Rest, Shortness of Breath, and Absences*

Social Security Ruling 96-8p requires that an "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, at *7. Identifying evidence of record in support of each symptom, Plaintiff argues that the ALJ's decision is devoid of any discussion of her fatigue, need to rest, shortness of breath, and absences.

In response, the Commissioner notes that Plaintiff cites only one medical record allegedly supporting her problems sleeping, tiredness, and need to rest and that the document is replete with her own subjective claims of tiredness and fatigue. Because the ALJ did not discuss these symptoms, the Court cannot know whether she discounted them as based only on Plaintiff's subjective

complaints, if she considered them at all. On remand, the ALJ shall discuss these symptoms of tiredness and fatigue in the RFC determination as required by Ruling 96-8p.

In contrast, the Court finds that the ALJ sufficiently discussed the evidence of Plaintiff's shortness of breath and limited Plaintiff's RFC accordingly by restricting her to sedentary work with additional limitations such as only occasional climbing of stairs. Plaintiff does not identify any evidence that supports greater functional limitations based on her shortness of breath. The ALJ did not fail to consider this evidence.

Finally, as for Plaintiff's absenteeism, Plaintiff represents in her brief that "she was fired from her part-time work in part due to her many hopsital visits." (Pl. Br. 23 (citing AR 306, 309). The cited record pages do not support this staetment. On page 306, which is in Plaintiff's adult function report, Plaintiff simply reported that she does not work any more. On page 309, another page from the report completed by Plaintiff, Plaintiff listed reasons why she cannot keep a job, one of which was allegedly "going in the hospital" as well as numerous other reasons (AR 309). Plaintiff did not report that she was fired, nor are there any reports or opinions that absenteeism will be a problem for Plaintiff. The ALJ did not fail to consider evidence of absenteeism.

### B. Past Jobs

Plaintiff argues that the ALJ erred by failing to set forth the job duties of Plaintiff's past work and to analyze whether Plaintiff could perform those job duties, citing *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991), and *Smith v. Barnhart*, 388 F.3d 251 (7th Cir. 2004). In her decision, the ALJ wrote,

> The vocational expert testified that the claimant would be able to perform her past work as a phone operator, a sedentary, skilled position with an SVP of 6. The Dictionary of Occupational Titles ("DOT") code is 235.137-010. I adopt this finding, as it is consistent with the medical evidence of record, and the claimant's description

11

> of this position. The claimant stated that at this job, she walked for 2 hours out of the day, stood for 1 hour and sat for 6 hours."

(AR 25-26 (citing Ex. 4E/7)). Thus, the ALJ considered the specific job Plaintiff held, not just the broad category of "sedentary" work. Notably, other than in relation to her mental and visual acuity impairments discussed in the previous section, Plaintiff does not identify any specific duties involved in her past work that are inconsistent with her abilities. *See Reed v. Astrue*, No. 1:10-cv-97, 2011 WL 1113538, at *8-9 (S.D. Ind. Mar. 24, 2011). On the record before the Court, the ALJ did not err in her discussion of Plaintiff's past work at step four. *See Getch*, 539 F.3d at 479, 481.

Plaintiff also argues that the vocational expert incorrectly classified her past work as "chief phone operator," which is a full-time supervisory position when Plaintiff's testimony was that she only performed supervisory duties one day a week. Thus, Plaintiff argues that the ALJ should have analyzed her past work as a "composite job" as being both a supervisory position one day a week and being a non-supervisory phone operator the remainder of the week. SSR 82-61, 1982 WL 31387, at *2 (1982) ("[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT."). The Commissioner correctly notes that the ALJ evaluated Plaintiff's job responsibilities as a phone operator as she "actually" performed the job, which is one of the tests for determining whether a claimant retains the capacity to perform past relevant work. *See id*. at *1. The Commissioner also correctly notes that Plaintiff, who was represented by counsel at the hearing, did not cross-examine the vocational expert about this issue at the hearing. *See Polchow v. Astrue*, No. 10 CV 6525, 2011 WL 1900065, at 820 (N.D. Ill. May 19, 2011).

Nevertheless, whether Plaintiff can perform either a supervisory job full time or even one day a week may be impacted by whether Plaintiff's mild limitations from her depression impact her RFC, which the ALJ will address on remand. Because the Court is remanding for a proper RFC

12

determination, the ALJ is directed to incorporate, in her analysis at step four, an evaluation of Plaintiff's job responsibilities as a phone operator both as she actually performed the job and as it is generally performed and to discuss whether it was a composite job under the regulations.

## C. Work in the Economy

Plaintiff argues that the ALJ erred at step five by not making a specific finding regarding skill transferability because Plaintiff, who was fifty-five years old, is considered a person of "advanced age." 20 C.F.R. §§ 404.1563, 416.963. The regulations require the ALJ to make certain findings when a person of advanced age is limited to sedentary work:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as follows. *If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry*. (See § 404.1567(a) and § 201.00(f) of appendix 2.)

20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4) (emphasis added). A court must review the actual reasons given by the ALJ for determining the transferability of skills, which is a determination entrusted to the ALJ, not the VE. *Abbott v. Astrue*, 391 F. App'x 554, 558 (7th Cir. 2010) (remanding "so that the ALJ can identify Abbott's acquired work skills and explain why he would need to make 'very little, if any, vocational adjustment' to a different job").

In this case, the ALJ noted that Plaintiff was in the age category of "advanced age" and then relied on the vocational expert's testimony that the identified jobs require skills acquired by Plaintiff's past relevant work but no additional skills. (AR 26, 27). The ALJ recounted that the

13

vocational expert testified "that the claimant's past relevant work as [sic] phone operator was skilled with a specific vocational preparation (SVP) code of 6 and required the following skills: obtaining and relaying information, scheduling and supervising." (AR 26). The ALJ concluded that, considering Plaintiff's age, education, and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 201.15 and Rule 201.07. *Id.*

Plaintiff argues that these do not all appear to be transferable skills based on the vocational expert's testimony, and that the ALJ failed to address the specific transferability question of vocational adjustment in terms of tools, work processes, and work settings in the industry. As to the latter, Plaintiff is correct that the ALJ did not make a specific finding that skills would transfer with "little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

As to whether there are in fact transferable skills based on the vocational expert testimony, a "skill" is defined in this context as "practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner." SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982). The vocational expert testified that, although the skills from Plaintiff's past job as a chief phone operator would transfer, "probably to do any other type of similar position it would maybe involve up to thirty days of out of job type training." (AR 50-51). The ALJ did not discuss this testimony in discussing transferability of skills at step five. Nevertheless, after listing the transferable skills of obtaining and relaying information and scheduling, the vocational expert testified that these skills would be transferable to "similar types of positions, like scheduling positions, scheduling clerk, some receptionist type positions, other type of phone operation, dispatching positions." (AR 50-51, 54).

14

The vocational expert then listed the DOT numbers for the other jobs adopted by the ALJ at step five.

The Court is already remanding for a proper RFC determination, which may in turn affect the ALJ's analysis at steps four and five. On remand, the ALJ is directed to make the requisite specific findings regarding transferability of skills and all relevant vocational expert testimony should the ALJ reach step five of the sequential analysis.

### D. Listing of Impairments

A claimant is presumptively disabled if her condition meets or equals an impairment from the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In this case, the ALJ found that Plaintiff did not have any physical impairment or combination of impairments that meet or equal a listing. (AR 21-22). In finding that Plaintiff does not meet the heart Listings under 4.00, the ALJ noted that Plaintiff's ejection fraction was not at listing level. The ALJ also stated that she considered Listing 3.03, which is for asthma. The ALJ summarized, "I conclude that the claimant does not manifest clinical signs or findings that meet the specific criteria of any of the Listings. In reaching this conclusion, the opinions of the State Agency Medical consultants have been considered. These medical professionals have evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." (AR 21).

Plaintiff argues that the ALJ erred in relying on these opinions because the opinion of Dr. Rosch was issued before later "critical evidence including findings of COPD." (Pl. Br. 17 (citing (AR 616, 648))). At step three, Plaintiff bears the burden of proving that her impairments satisfy the criteria of any listing. Plaintiff does not specifically discuss the evidence at the pages she cites. Nor

does she identify what listing she asserts that she now meets and offers no analysis of the "findings of COPD" in relation to the requirements of the specific findings. Plaintiff has not shown error.

Plaintiff is correct that an ALJ is required to obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impariment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *1, 3-4 (July 2, 1996); *see also Harlin v. Astrue*, 424 F. App'x 564, 568 (7th Cir. 2011). On remand, the ALJ will have the opportunity to obtain an updated medical expert opinion on equivalence that includes all of the most recent medical findings, if she feels it is necessary.

Plaintiff also argues that the ALJ erred by relying on the opinions of Dr. Rosch and the Agency reviewing physicians because none of them indicated that they were aware of Plaintiff's obesity or considered it when finding that no listing was satisfied. *See* SSR 02-1p, 2002 WL 34686281, at *5 (Sept. 12, 2002). In her analysis at step three, the ALJ wrote, "[b]ecause there is no listing for obesity, I considered, pursuant to SSR 02-01p, the cumulative effects the claimant's obesity has on her impairments. However, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (AR 22). The reviewing physicians reviewed the medical records and would have been aware of Plaintiff's obesity based on her height and weight in the treatment records. Plaintiff has failed to specify how obesity further impaired her ability to work and has not identified any medical records regarding her obesity;

16

speculation is not enough. *See Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *see also Prochaska*, 454 F.3d at 736-37. The ALJ's analysis was sufficient.

## E. Credibility Determination

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

As an initial matter, Plaintiff criticizes the ALJ's use of "boilerplate" language in the credibility determination. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); (AR 23). An ALJ's use of the boilerplate language does not amount to reversible error if she "otherwise points

17

to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367-68.[1] In this case, the use of "boilerplate" language does not require remand because the ALJ considered the required factors in assessing Plaintiff's credibility and analyzed the evidence. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). However, Plaintiff argues that the credibility determination is not supported by the three reasons given by the ALJ, which are that Plaintiff was released from the emergency room after "limited treatment," her reluctance to admit to a past history of drug use, and that she smokes cigarettes. (AR 23, 25).

Plaintiff argues that the ALJ should not have considered the fact that, although Plaintiff appeared to have quit smoking, she had continued to smoke despite her doctors' admonitions to quit. *See* (AR 25). Given that Plaintiff suffers from cardiac and pulmonary impairments, it was not generally unreasonable for the ALJ to consider that Plaintiff smoked despite the warnings of her doctors. However, in *Rousey v. Heckler*, the Seventh Circuit Court of Appeals rejected the ALJ's determination that the plaintiff could return to work if she stopped smoking. 771 F.2d 1065, 1069 (7th Cir. 1985). The court also rejected the ALJ's finding that her complaints of chest pain were not credible since she continued to smoke a half-pack of cigarettes a day. *Id*. at 1070. In *Shramek v. Apfel*, the Seventh Circuit Court of Appeals reasoned that "it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testified that the condition is serious or painful. Given the addictive nature of smoking, the failure to quit is as likely attributable

---

[1] Recently, the Seventh Circuit Court of Appeals has rekindled its criticism of the boilerplate language because the language's "implication . . . is that residual functional capacity (ability to engage in gainful employment) is determined *before* all the evidence relating to the claimed disability assessed, whereas in truth all that evidence is material to determining the claimant's residual functional capacity." *Browning v. Colvin*, No. 13-3836, — F.3d — , —, 2014 WL 4370648, at *3 (7th Cir. Sept. 4, 2014); *see also Goins v. Colvin*, No. 13-3729, — F.3d —, —, 2014 WL 4073108, at *3 (7th Cir. Aug. 19, 2014).

18

to factors unrelated to the effect of smoking on a person's health." 226 F.3d 809, 813 (7th Cir. 2000).

Two of the cases cited by the Commissioner in support of the ALJ's analysis in this case are distinguishable in that the ALJ in each considered smoking in addressing the RFC and not in determining credibility. *See Jones v. Astrue*, NO. 11 C 3958, 2012 WL 4120417, at *8 (N.D. Ill. Sept. 18, 2012); *Rogers v. Barnhart*, 446 F. Supp. 2d 828, 856 (N.D. Ill. 2006). And, although the court in *Sombright v. Astrue*, found it appropriate for the ALJ to consider the plaintiff's failure to follow her doctor's recommendation to stop smoking and drinking, lose weight, and adopt a healthier lifestyle in weighing credibility, the court did not discuss *Rousey* or *Shramek*. No. 10 C 2924, 2011 WL 1337103, at *12 (N.D. Ill. Apr. 6, 2011). On remand, the ALJ shall consider this case law in relying on Plaintiff's history of smoking in weighing her credibility.

As for her drug use, the ALJ noted that Plaintiff engaged in drug use and was less than forthright with the consultative examiner about her past use. Plaintiff cites *McClesky v. Astrue*, 606 F.3d 351, 353 (7th Cir. 2010), in which the court criticized the ALJ for doubting the plaintiff's credibility because of inconsistent statements regarding past drug use, reasoning that perhaps the plaintiff did not admit to using cocaine because of a fear of getting in trouble. But, the court also acknowledged that a lack of candor in one area may be indicative of lack of candor in another. *Id.* On remand, the ALJ shall consider this case law in relying on Plaintiff's drug use and lack of candor regarding drug use in weighing Plaintiff's credibility.

Finally, the ALJ noted that the post-hearing evidence showed that Plaintiff was sent home from the emergency room after limited treatment. (AR 25 (citing Ex. 27F)). Plaintiff argues that the ALJ erred by relying on a perceived lack of aggressive treatment absent evidence of accepted

19

appropriate treatment. An ALJ is expressly permitted to consider a claimant's treatment history. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)(v)). The ALJ had also noted that "despite a number of visits to the emergency room for shortness of breath and chest pain, the claimant was treated conservatively." (AR 23). The ALJ did not err in relying on Plaintiff's treatment history.

Although the ALJ fully discussed the medical evidence and the opinion evidence of record in the context of the credibility determination, the ALJ did not discuss Plaintiff's activities of daily living, precipitating and aggravating factors, and medication side effects, as set forth in SSR 96-7p. Although the ALJ considered some activities of daily living in the context of whether Plaintiff had any limitations in the mental functional areas of activities of daily living, social functioning, and concentration, persistence, or pace at step two, the ALJ did not discuss activities of daily living as an aspect of credibility. The ALJ also did not discuss at all the report completed by Plaintiff's husband (AR 280-86), as required by SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). On remand, the ALJ shall incorporate in the credibility determination a discussion of the factors in SSR 96-7p as well as the report completed by Plaintiff's husband.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 24th day of September, 2014.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc:    All counsel of record